UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| DOUGLAS A. DENNING, on behalf of himself and others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MANKIN LAW GROUP, P.A.,<br><br>　　　　　Defendant. | Case No. 8:21-cv-02822-MSS-MRM<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## Introduction

With universal support from the parties and from class members, Douglas A. Denning ("Plaintiff") presents for final approval under Rule 23(e) a class settlement that will provide class members as much as $117.03 each. Plaintiff initiated this lawsuit seeking relief for himself and for his fellow community members who had been the subject of debt collection efforts by Mankin Law Group, P.A. ("Defendant") on behalf of Countryside North Community Association, Inc. (the "Association").

The settlement at bar creates two non-reversionary class settlement funds totaling $23,880 in the aggregate—one for class members who received allegedly improper debt collection communications, and a separate fund for subclass members who made payments to Defendant in response to the collection letters. Notably, this sum of $23,880 well exceeds the combined statutory damages limit imposed by the Fair Debt Collection Practices Act ("FDCPA") and Florida Consumer Collection Practices Act ("FCCPA"), based upon Defendant's balance sheet net worth. Also important, the settlement confirms a significant change to Defendant's debt collection practice: Defendant no longer collects the specific Association assessments here in dispute. This prospective relief benefits not only class members but any other consumers who may have been targeted for collection by Defendant in the future.

Plaintiff secured these excellent recoveries without class members having to wait months, or even years, longer while the parties completed discovery, undertook dispositive motion practice, and then potentially conducted trial and appeals thereafter. Plaintiff is

proud to have obtained excellent benefits for the hundreds of community members subjected to Defendant's collection efforts.

Besides the two class funds, Defendant also separately will pay all settlement administration costs, plus a separate award of attorneys' fees, costs, and litigation expenses in the agreed amount of $85,000, as allowed under the FDCPA and FCCPA, and for which Magistrate Judge McCoy recommends approval. *See* ECF No. 48. As well, Defendant agreed to pay Plaintiff, separate from the class funds, $2,000 in individual statutory damages ($1,000 under each of the FDCPA and FCCPA), as allowed by law.

With Class-Settlement.com—the court-approved class administrator—having mailed class notice directly to all class members, using their names and addresses from Defendant's own business records, the class's response has been universally positive: not one class member excluded himself or herself, and none objected to the settlement. No objections resulted from notice issued pursuant to the Class Action Fairness Act ("CAFA"), either. The class's broad support and lack of opposition underscore the success Plaintiff achieved for all class members.

Plaintiff and his counsel strongly believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of all class members. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting final approval to the settlement.

Neither Defendant nor any class members oppose this relief.

## Summary of the Class Settlement

This Court on November 15, 2022 certified a Rule 23(b)(3) settlement class composed of all persons to whom, between December 4, 2019 and September 21, 2022, Defendant mailed to a Florida address a debt collection communication, not known to be returned as undeliverable, and in connection with the collection of a consumer debt, which attempted to collect assessments owed to the Association in the amount of $125 for 2019, 2020, and/or 2021, and/or interest on such assessments. *Denning v. Mankin L. Grp., P.A.*, No. 21-2822, 2022 WL 16956527, at *1-2 (M.D. Fla. Nov. 15, 2022) (Scriven, J.). At the same time, this Court certified a subclass composed of those class members who made a payment to Defendant in response to the challenged collection communications. *Id.*

The parties mailed class settlement notices to 263 potential class members to whom Defendant had mailed the subject collection letters. *See* Decl. of Dorothy Sue Merryman, attached as Exhibit 1, at ¶ 6. Per this Court's preliminary approval order, the deadline to submit exclusion requests or object to the settlement passed on January 17, 2023. *See* 2022 WL 16956527, at *4.

Each class member will receive a pro-rata share of $57.03 from the dedicated $15,000 class settlement fund. Moreover, each subclass member additionally will receive a $60 pro-rata share of the separate $8,880 subclass fund. Therefore, all subclass members will receive $117.03 in total when combining their recoveries from both the class settlement fund and the subclass settlement fund.

In the event any settlement checks go uncashed after Class-Settlement.com takes all reasonable steps to forward checks to any forwarding addresses, the remaining settlement

3

monies will be distributed to Bay Area Legal Services—the *cy pres* recipient selected by the parties.

Additionally, Defendant has confirmed that it no longer collects the specific Association assessments at issue in this case. Such a change in Defendant's collection practices is an important public benefit that might not have been obtained had this case gone to trial.

Defendant also will pay to Plaintiff, separate and apart from the class and subclass settlement funds, $1,000 in "additional damages" pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2)(B)(i), and $1,000 in "additional statutory damages" pursuant to the FCCPA, Fla. Stat. § 559.77(2), for a total of $2,000 in individual statutory damages, as prescribed by those statutes.

Defendant separately will pay all costs of class notice and settlement administration, as well as an award of attorneys' fees, costs, and litigation expenses in the agreed amount of $85,000. Magistrate Judge McCoy has undertaken a careful review of Plaintiff's fee and expense request and recommended its approval by this Court, presuming final settlement approval. *See generally* ECF No. 48.

Following the successful class notice campaign, not one person lodged any objection to the settlement—including to the individual awards for Plaintiff—and no one requested to be excluded. Ex. 1 at ¶ 8. Nor have any objections resulted from Defendant's issuance of the required CAFA notice to applicable governmental agencies. Thus, the support for the parties' settlement is unanimous.

## Argument

### I. This Court should confirm its certification of the settlement class and subclass.

In connection with preliminary approval, this Court certified the settlement class and subclass identified above. 2022 WL 16956527, at *1-2. As nothing has changed in the interim, Plaintiff sees no need to revisit certification; the Court should confirm certification of the settlement class and subclass.

### II. This Court should finally approve the class settlement as fair, reasonable, and adequate under Rule 23(e).

District courts within this circuit consider six factors in analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

Further, Rule 23 itself adds several more factors for consideration, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, Plaintiff is confident that each relevant factor supports the conclusion that the parties' settlement now before this Court is fundamentally fair, adequate, and reasonable,

and should be approved. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 05-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (Steele, J.) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

### A. A private mediator directed the parties' arm's-length settlement negotiations.

The parties reached their agreement here only after a private mediation with Steven R. Jaffe, Esq.[1] of the Upchurch Watson White & Max Mediation Group, whose oversight was instrumental in bringing the parties together. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." *See* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011); *see also Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 10, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

Correspondingly, this settlement is not a product of fraud or collusion but was the result of arm's-length settlement negotiations, directed by an experienced class action mediator. And the parties mediated this case with the benefit of extensive motion briefing on Defendant's motion to dismiss, as well as Plaintiff's class certification motion, so each

---

[1] *See* https://www.uww-adr.com/Steven-R--Jaffe-10-727.html (last accessed February 21, 2023).

side had a well-founded view as to the strengths and weaknesses of their respective positions. This factor supports final approval.

### B. The complexity, expense, and likely duration of the litigation favors final approval.

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources").

This case was no different. After nearly a year of hard-fought litigation and tedious discovery, Plaintiff defeated Defendant's motion to dismiss but still faced several obstacles to a class recovery, including obtaining certification of litigation classes over Defendant's objection—as opposed to the settlement class and subclass at bar—and then prevailing either at summary judgment or at trial, and ultimately likely on appeal. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

And aside from the complexity of these various certification- and merits-related issues, such extensive motion practice would have taken many more months. By comparison, the settlement here makes immediate compensation available to over 260 class

7

and subclass members. Also worth noting, because damages under the FDCPA and FCCPA are not mandatory (as explained further below), there is no guarantee that Plaintiff would have recovered any money at all for those class and subclass members, even assuming a trial victory. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Given these risks, as compared to the excellent results obtained for all class and subclass members, final approval is warranted. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### C. The parties sufficiently developed the factual record to enable Plaintiff and his counsel to make a reasoned settlement judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that the parties had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) (Nimmons, J.).

Here, by the time of mediation, the parties had engaged in substantial written discovery about the merits of the claims, the propriety of class certification, the number and identities of potential class and subclass members, as well as Defendant's net worth—the sole determinant of the class's potential statutory damages award here. *See* 15 U.S.C. § 1692k(a)(2)(B); Fla. Stat. § 559.77(2). Thus, the parties achieved settlement with a clear view as to the strengths and weaknesses of the case, and they could compare the benefits of the proposed settlement to further litigation.

To be sure, class counsel is well-versed in FDCPA and FCCPA class litigation, having litigated dozens of similar actions nationwide. *See* ECF No. 47-1 at ¶¶ 13-24 (describing class counsel's experience). They used their deep knowledge to overcome Defendant's vigorous efforts to obtain an early dismissal, then to conduct class discovery and class certification briefing, and finally to negotiate a resolution that maximizes the value of both class members' and subclass members' claims. The settlement therefore was consummated with a firm understanding of the parties' respective positions and the maximum potential recovery for the class and subclass. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

**D. The probability of Plaintiff's and the class's success on the merits, coupled with the range of possible recovery, favor final approval.**

The Court also is to consider "the likelihood and extent of any recovery from the

9

defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314. In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.

No matter, the class settlement fund here amounts to more than the best theoretical statutory damages recovery for the class and subclass given the limitations on such damages in both the FDCPA and FCCPA. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting FDCPA class statutory damages to the lesser of $500,000 or one percent of the debt collector's net worth); Fla. Stat. § 559.77(2) (same for FCCPA). While the parties may disagree about the proper way to calculate Defendant's net worth, the $15,000 class settlement fund represents a recovery that is more than double the statutory cap of one percent of Defendant's balance sheet net worth (to account for potential class member recoveries under both the FDCPA and FCCPA). *See, e.g.*, *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities).

Also noteworthy, there was no guarantee of a full statutory damages award at trial because the FDCPA's and FCCPA's damages provisions are permissive rather than mandatory; the statutes provide for awards *up to* certain amounts after balancing specified factors like the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2); Fla. Stat. § 559.77(2).

And so it follows that, even had Plaintiff and the class and subclass prevailed at trial, the jury still could have awarded little in the way of statutory damages, or potentially none at all. And this risk of a minimal damages award in an FDCPA class action was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) (Moody, J.) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

As well, the subclass of individuals who made payments to Defendant will additionally share in a separate $8,880 subclass settlement fund—good for $60 per person above and beyond their $57.03 share of the class fund (for total individual recoveries of $117.03). Plaintiff specifically negotiated this separate subclass fund to recognize and compensate those aggrieved members of the class with potential out-of-pocket losses owing to Defendant's alleged FDCPA and FCCPA violations.

Given the foregoing, the immediate relief provided by the settlement is substantial, and a recovery of approximately $57 per class member—and approximately $117 per subclass member—is an excellent result that aligns well with other recent FDCPA class settlements. *See, e.g.*, *Sinkfield v. Persolve Recoveries, LLC*, No. 21-80338, 2023 WL 511195, at *3 (S.D. Fla. Jan. 26, 2023) ($20,000 settlement fund resulting in approximately $130 per person); *Brockman v. Mankin Law Grp., P.A.*, No. 20-893, 2021 WL 911265, at

11

\*2 (M.D. Fla. Mar. 10, 2021) (Scriven, J.) (approximately $60 per claimant); *Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at \*2 (S.D. Fla. May 27, 2020) ($15.67 per class member); *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 6709575, at \*2 (S.D. Fla. Nov. 22, 2019) ($27.51); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-803, 2019 WL 2280456, at \*2 (M.D. Fla. May 28, 2019) (Scriven, J.) ($10).[2]

What's more, Plaintiff also obtained his maximum potential individual damages award of $1,000 under each statute, *see* 15 U.S.C. § 1692k(a)(2)(A); Fla. Stat. § 559.77(2), and secured Defendant's confirmation that it no longer collects the disputed Association assessments at issue—the latter being an achievement not necessarily available at trial. *See, e.g.*, *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief to private litigants."). This prospective relief will benefit consumers who might otherwise have become the subject of Defendant's collection efforts in the future.

In sum, Plaintiff and the class have done better by way of the statutory damages recovered through this settlement than they could have hoped for at trial, *without* the

---

[2]   *See also Riddle v. Atkins & Ogle Law Offices, LC*, No. 19-249, 2020 WL 3496576, at \*2 (S.D. W. Va. June 29, 2020) ($28.20); *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at \*4 (D. Me. Feb. 21, 2017) ($42); *Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165, at \*4 (M.D. La. Sept. 14, 2016) ($52.28); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2015 WL 223764, at \*3 (S.D. Ohio Jan. 16, 2015) ($31); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at \*14 (D.N.J. Sept. 10, 2013) ($7.87); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32).

attendant risks and delays of protracted litigation. These factors strongly support the Court's final approval of this settlement.

### E. Plaintiff's and his counsel's opinions, universal support from class members, and the lack of any opposition strongly support final approval.

Both Plaintiff and his counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of all class and subclass members. A strong initial presumption of fairness attaches to the proposed settlement because it was reached by well-qualified and experienced counsel engaged in arm's-length negotiations. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *accord* ECF No. 47-1 at ¶¶ 13-24 (demonstrating class counsel's extensive experience).

Further, "[t]he attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). Following a direct mail notice campaign, no opposition exists here—not one person objected to the settlement, nor did any objections result from CAFA notice. This is significant. *See Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) ("As to the fifth *Bennett* factor, the Court finds that the substance and amount of opposition to the

13

settlement weighs in favor of the settlement's approval. No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

Moreover, no class member requested to be excluded from this settlement, either. The class's universally favorable reaction well supports settlement approval. *See Brockman*, 2021 WL 911265, at *2-3 (finally approving FDCPA class settlement with no objections and two exclusions); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) (Merryday, J.) ("[N]o class member objects to the settlement, and only thirty-one prospective class members requested exclusion from the class. The absence of opposition to the settlement militates heavily toward approval.").

In sum, the class's unanimous support for the settlement has now reinforced the initial presumption of fairness such that class members' positive reactions, and the absence of any opposition, strongly favor final settlement approval.

### F. The settlement treats class and subclass members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note guides courts to consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of the same form of debt collection letter from Defendant. And as a result, the settlement provides that each class member will receive an equal portion of the dedicated class settlement fund. *See*

14

*Burrow v. Forjas Taurus S.A.*, No. 16-21606, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) ("The Settlement also treats Settlement Class Members equally and fairly. There is no distinction between the benefits offered, and all Settlement Class Members receive the benefit of the Enhanced Warranty Service automatically. Furthermore, the steps Settlement Class Members must take to receive the Enhanced Warranty Service and the Inconvenience Payment are far from onerous.").

Additionally, Defendant will create a separate subclass settlement fund benefitting only those class members who made payments to Defendant in response to the challenged collection letters—*i.e.*, only subclass members. Proportioning the class and subclass recoveries in this way recognizes the greater maximum potential recoveries for subclass members, while still treating all class members and subclass members equitably relative to one another.

Moreover, class members had the ability to exclude themselves from the settlement and pursue their claims individually. *See Charvat v. Valente*, No. 12-5746, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 28, 2019) ("[T]he ability to opt out of the settlement allows class members who received more than three calls to pursue the possibility of a greater award in an individual suit."). These considerations additionally support final settlement approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

15

### III.  Plaintiff's individual damages awards totaling $2,000 should be approved.

Aside from his pro-rata shares of the class and subclass settlement funds, Defendant separately will pay Plaintiff $1,000 in "additional damages" pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2)(B)(i), plus $1,000 in "additional statutory damages" pursuant to the FCCPA, Fla. Stat. § 559.77(2). Both damages awards are appropriate and should be approved.

Indeed, the FDCPA at subsection 1692k(a) reads:

(a)  Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

\*   \*   \*

(2)

(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, *(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and* (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a) (emphasis added).

And the relevant section of the FCCPA reads:

*In a class action lawsuit brought under this section, the court may award additional statutory damages of up to $1,000 for each named plaintiff and* an aggregate award of additional statutory damages up to the lesser of $500,000 or 1 percent of the defendant's net worth for all remaining class members[.].

16

Fla. Stat. § 559.77(2) (emphasis added). Thus, the individual "additional damages" awards to Plaintiff are expressly allowed by both statutes.

Moreover, they are commonplace in FDCPA class settlements like this one. *See, e.g.*, *Sinkfield*, 2023 WL 511195, at *3 (noting in finally approving FDPCA class settlement that "Plaintiff will receive from the Defendant the sum of $1,000.00 for her 'additional damages' pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i)"); *Brockman*, 2021 WL 911265 at *3 ("The Court approves the payment of $1,000 to Plaintiff in statutory damages"); *Claxton*, 2020 WL 2759826, at *3 ("Class Representative will receive from SET the sum of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i)"); *Riddle v. Atkins & Ogle Law Offices, LC*, No. 19-249, 2020 WL 1303939, at *3 (S.D. W. Va. Feb. 26, 2020) ("Defendant will pay to the Class Representative the sum of $1,000 as statutory damages pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B)(i)"); *Dickens*, 2019 WL 2280456, at *3 ("Class Representative, on behalf of the estate of Ronnie Dickens, will each receive from Defendant the sum of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i)").

As a result, the $1,000 individual damages recovery by Plaintiff under each statute is fair and supported by existing law.

## Conclusion

The class settlement at bar will provide class members $57.03 each, plus another $60 each for subclass members (for a total of $117.03 for those individuals), plus prospective relief in the form of Defendant's confirmation that it no longer attempts to collect the Association assessments here in dispute. Class members universally support the

settlement, as evidenced by their lack of objections or requests for exclusion. What's more, Plaintiff's individual damages awards are prescribed by law and should be approved. This Court should enter the accompanying order granting final approval to the parties' settlement.

Noteworthy, neither Defendant nor any class members oppose this relief.

Dated:  February 22, 2022               Respectfully submitted,


                                        /s/ *Jesse S. Johnson*
                                        James L. Davidson
                                        Florida Bar No. 723371
                                        Jesse S. Johnson (Lead Counsel)
                                        Florida Bar No. 69154
                                        Greenwald Davidson Radbil PLLC
                                        5550 Glades Road, Suite 500
                                        Boca Raton, FL 33431
                                        Tel: (561) 826-5477
                                        jdavidson@gdrlawfirm.com
                                        jjohnson@gdrlawfirm.com

                                        *Class counsel*